OPINION TO THE HOUSE OF REPRESENTATIVES.

MARCH 18, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

OPINION as to whether the general assembly may authorize persons absent from the state in the military service of the United States in time of war to register for voting purposes, whether it may authorize such persons to vote for candidates for offices in cities and towns, and whether it may authorize them to cast absentee ballots before the dates of biennial general elections.

First question answered in the affirmative, and second and third questions answered in negative.

March 18, 1942.

*To the Honorable, the House of Representatives of the State of Rhode Island and Providence Plantations.*

We have received from the honorable house of representatives a resolution requesting, in accordance with article XII, section 2 of amendments to the constitution of this state, our written opinion upon the three following questions of law.

"May the legislature authorize those absent from the state in the actual military service of the United States, in time of war, to register, for the purposes of voting, by affidavit or otherwise, when they cannot return to the city or town where they reside?

"May the legislature authorize those absent from the state in the actual military service of the United States, in time of war, to vote for candidates for offices in cities and towns?

"May the legislature authorize those absent from the state

in the actual military service of the United States, in time of war, to cast absentee ballots, before the Tuesday next after the first Monday in November, the time for holding biennial general elections?"

We interpret the first question to mean: (1) May the legislature authorize those electors, otherwise qualified to vote, who are absent from the state in the actual military service of the United States, in time of war, to register, by affidavit or otherwise, on or before the last day provided for biennial registration, when they cannot return to the city or town where they reside in order to register?

For convenience, the terms and words we are now about to mention will hereinafter be given the following meaning in this opinion. "Military service" means service in either the army or the navy. "Absent elector" means an otherwise qualified elector who is absent from this state in the military service as just defined. "Constitution" refers solely to the constitution of Rhode Island. Questions one and three are somewhat related and will be treated first in that order.

The issue raised by the first question is whether the general assembly has the power under the constitution to pass a law or laws for the purpose and to the extent specified in that question as interpreted by us.

Article II, sec. 6, of the constitution provides: "The general assembly shall have full power to provide for a registry of voters, to prescribe the manner of conducting the elections, . . . and generally to enact all laws necessary to carry this article into effect, and to prevent abuse, corruption and fraud in voting."

Article XVIII, section 1, of amendments to the constitution, empowers the legislature to "provide by law for the registration necessary to qualify persons to vote, which registration shall extend over a biennial period . . . ."

Article XX, section 1, of said amendments, describes who "shall have a right to vote in the election of all civil officers". Among the requirements that a person, who does not own

real estate or pay a personal property tax, must meet under this section, in order to qualify as an elector is that he "shall be registered in the town or city where he resides on or before the last day of June in the registration period next preceding the time of his voting".

General laws 1938, chapter 310, § 9, entitled: "The Rights and Qualifications of Voters", provides that on and after June 30, 1930, the registration period for voters provided for in the two articles of the constitution just above mentioned "shall begin on the first day of July, A. D. 1930, and biennially thereafter, and shall end on the last day of June, A. D. 1932, and biennially thereafter."

For our immediate purpose, it is sufficient to point out that article XXI, section 1, of amendments to the constitution, provides that: "The electors of this state, who are absent from the state, being otherwise qualified to vote at the general election held biennially on the Tuesday next after the first Monday in November, shall have the right to vote" for certain officers, with "full power" in the general assembly "to provide by law for carrying this article into effect . . . ." The closing sentence of this section reads as follows: "The general assembly may also provide special regulations and manner of voting for those persons who are absent from the state in the actual military service of the United States."

Considering the constitutional provisions heretofore cited in relation to each other, we are clearly of the opinion that the general assembly has the power to provide by law for the registration of absent electors as defined in this opinion, provided, however, that such registration be within the registration period prescribed by the constitution. Our answer to the first question is therefore in the affirmative.

The third question, as interpreted by us, is: "May the legislature authorize those electors, otherwise qualified to vote, who are absent from the state in the actual military service of the United States, in time of war, to cast absentee ballots *before* the Tuesday next after the first Monday in

November, the time for holding biennial general elections?"

Article XVI, section 1 of amendments to the constitution, provides that the general officers of the state, and senators and representatives in the general assembly, "shall be elected . . . *on* the Tuesday next after the first Monday in November, biennially, commencing A. D. 1912 . . . ." (italics ours)

Article XXI, section 1 of amendments, provides that an absent elector, otherwise "qualified to vote at the general election held biennially on the Tuesday next after the first Monday in November" shall have the right to vote for certain officers.

The above-quoted language of section 1 in each of these two articles of amendments to the constitution is clear. Section 1 of article XVI fixes a definite date *on* which a general election shall be held in this state; and section 1 of article XXI authorizes an absent elector, who is "otherwise qualified", to vote on that *same* date.

Upon reading the foregoing provisions with reference to each other, we have no doubt that, under the constitution, only duly qualified electors, who are living on the day therein designated for holding an election, shall be entitled to cast a vote and have it counted. If an absent elector, as herein defined, were authorized to cast his vote *before* the prescribed day, his vote might be counted as a valid vote even though he might have died before that day. A law allowing such an exception would violate a clear mandate of the constitution. Whatever other power may be vested in the general assembly by the last sentence in article XXI, section 1, that sentence gives no power to the general assembly to change the day of the general election held biennially, when the vote of a qualified elector, whether an absent elector or not, shall be cast. For these reasons, we answer the third question in the negative.

The second question is not without difficulty. Such difficulty arises largely over what meaning is to be given to the last sentence of article XXI, section 1, of amendments,

namely: "The general assembly may also provide special regulations and manner of voting for those persons who are absent from the state in the actual military service of the United States."

The question naturally arises as to what was the purpose in adding that provision to the foregoing portion of the section which expressly provided that: "The general assembly shall have full power to provide by law for carrying this article into effect . . . ." Did the people intend to authorize the general assembly to confer, if it so desired, upon those in the actual military service of the United States, special rights to vote for officers in addition to those enumerated in the preceding part of the amendment; or did they merely intend to authorize the general assembly to provide a special mode by which those in such service could more conveniently exercise the right to vote for such officers as all other absent electors could vote for under the express language of this amendment?

Under article IV of amendments to the constitution those in the actual military service of the United States *in time of war* were specially favored by being allowed to vote *in absentia* for certain officers, and they were the only electors who were thus permitted to vote until the adoption of article XXI of amendments on November 4, 1930. By that amendment this privilege was extended to all absent electors; and article IV of amendments was expressly repealed.

Under a liberal construction in favor of those citizens performing or called to perform the highest duty of a citizen in a free government, that of military service in its defense in time of war, it is arguable that the people intended that the legislature should be authorized to make special provisions in favor of such citizens, not only as to the exercise of the franchise, but also as to the extension of it. Such an argument in times like the present appeals strongly to the heart, and were we free to follow only our feelings in the matter, we would have no difficulty; but in this, as in

all other questions pertaining to the scope and limitations of the constitution, we are bound by the well-established rules of construction of constitutions.

The words, "provide special regulations and manner of voting" in the last sentence of section 1 are not apt words to authorize the general assembly to confer upon the absent electors in the actual military service of the United States a greater franchise than that expressly conferred by the amendment upon all absent electors. On the contrary, upon first reading, such words seem to refer more naturally to the method or mechanics of exercising the limited franchise so conferred. While the word "regulations" imports some difficulty in this respect, we take it to be no more than a variation of expression referring to "manner of voting".

It is clear from the whole amendment that it, *ex proprio vigore,* confers the right upon all absent electors to vote and nowhere leaves it to the general assembly to grant or withhold such right. If the last sentence were to be construed as vesting in the general assembly the discretionary power to allow absent electors in the military service of the United States to vote for officers in addition to those enumerated in the amendment, this would be a departure, not only from the foregoing part of the amendment, but also from the precise way in which the franchise was conferred by article IV of amendments upon electors absent in time of war in the actual military service of the United States.

We think that if the people intended any special grant in addition to that specifically described in the amendment, they would have more clearly expressed it themselves and would not have left it by such doubtful language to be conferred or not by the general assembly in its discretion. This view, we are frank to say, is not the only view. It is, however, the one to which we have come after such consideration as we have been able to give the matter under the circumstances and without the benefit that almost invariably comes from the industrious research and earnest argument

of adversary counsel in a litigated case. We therefore answer the second question in the negative.

<div style="text-align:right">

EDMUND W. FLYNN,
WILLIAM W. MOSS,
ANTONIO A. CAPOTOSTO,
HUGH B. BAKER,
FRANCIS B. CONDON.