COMMISSIONERS OF WOBURN CEMETERY *vs.* TREASURER OF WOBURN.

Middlesex.    December 6, 1945. — January 16, 1946.

Present: FIELD, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Woburn. Municipal Corporations,* Trusts, Cemetery, Department, Contracts, Municipal finance. *Contract,* Validity, With municipality.

Under St. 1884, c. 109, § 6, as amended by St. 1892, c. 149, § 3, income from trust funds held by the city of Woburn for its cemetery should not have been deposited by the city treasurer in a general bank account in which all the city revenues were deposited, but should have been kept separate, and was subject to the control and management of the board of cemetery commissioners.

Under the charter of the city of Woburn, St. 1897, c. 172, the board of cemetery commissioners are in charge of a department of the city and subject to G. L. (Ter. Ed.) c. 44, § 31.

The power of the board of cemetery commissioners of the city of Woburn under St. 1884, c. 109, § 4, to expend, without a previous appropriation, money received by the city from the sale of cemetery lots was taken away by St. 1928, c. 396, § 2, and thereafter G. L. c. 44, § 53, was applicable.

A contract by a city's cemetery department imposing on the city an obligation to pay for work done in preparing a portion of the cemetery for burial purposes was invalid where payment was to be made as an ordinary current municipal expense and the appropriation available to the cemetery department at the time of the making of the contract was insufficient to meet the expenditure required thereby.

Under St. 1884, c. 109, § 4, proceeds received by the city of Woburn
from the sale of lots in its cemetery should not have been deposited
in a general bank account in which all the city revenues were de-
posited, but should have been kept separate.

PETITION, filed in the Superior Court on November 15,
1944.

The case was heard by *O'Connell, J.*

*J. E. Henchey,* for the petitioners.

*J. Gorrasi,* for the respondent, submitted a brief.

RONAN, J.   This is a petition by the board of commis-
sioners of Woburn Cemetery for a writ of mandamus to
compel the respondent to "separate the funds of your peti-
tioners from other funds in his custody or possession as
treasurer of the city of Woburn," and to order him to pay
from the funds of the petitioners the sum of $1,400 to one
Akeson for work done by him in laying out lots in the said
cemetery in accordance with a contract between him and
the said board.   The petitioners appealed from a judgment
dismissing the petition.

The town of Woburn purchased in 1845 a parcel of land
which, together with other land subsequently acquired, has
since been maintained as a cemetery.   This cemetery since
the enactment of St. 1884, c. 109, as amended by St. 1892,
c. 149, has been under the control and management of a
board of commissioners who, in accordance with these two
chapters, were. elected annually until the town became a
city in 1888.   Under the chapters just mentioned, the board
was charged with the maintenance, embellishment and im-
provement of the cemetery.   The proceeds from the sales
of lots were to be paid into the city treasury, to be kept
separate from other funds and to be devoted to the im-
provement and embellishment of said cemetery under the
direction of the board.   St. 1884, c. 109, § 4.   The city was
authorized to hold "any appropriation, grant, donation, gift
or bequest" in trust for the care of burial lots or for the
improvement of the cemetery in accordance with the terms
upon which the gift was made, or upon such conditions as
the board might establish, and could by an agreement bind
the city to apply the gift in accordance with such terms and

conditions. St. 1884, c. 109, § 5, as amended by St. 1892, c. 149, § 2. It was provided by St. 1884, c. 109, § 6, as amended by St. 1892, c. 149, § 3, that "All funds now in the treasury of said city of Woburn, belonging to the account of said cemetery and any and all sums of money so received by said treasurer, shall be invested by him under the direction of said board of commissioners, and all the same and all property so received shall ever be kept separate from any other moneys or property belonging to said city, and the income of the same shall be received by its treasurer, be subject to the order of said board of commissioners, and be appropriated by them in such manner as shall in their opinion best promote the purposes for which said appropriation, grant, donation, gift or bequest was or is made."

The city charter, St. 1897, c. 172, § 32, provides for the appointment by the mayor of a board of five cemetery commissioners, with the powers and duties prescribed by St. 1884, c. 109, as amended. The charter also provides, § 37, that "The above-named administrative officers and boards shall, in their respective departments, make all necessary contracts for work . . . subject to the approval of the mayor in writing." Contracts made by any department where the amount involved is $500 or more must be in writing, and "no such contract shall be deemed to have been made or executed until the approval of the mayor is affixed thereto." St. 1897, c. 172, § 42.

The cemetery during the period now in question has been maintained by appropriations made by the city supplemented by income from the trust funds and transfers made by the city council from an account captioned "sale of lots and graves." The petitioners made a contract with Akeson on October 7, 1943, to prepare a portion of the cemetery for burial purposes. In that year, the city appropriated for the maintenance of the cemetery $5,850 for salaries and $1,500 for expenses. The proceeds from the sales of lots were turned over to the city treasurer. Although this account was kept separate in the books of the city treasurer and in those of the city auditor, the proceeds were deposited

by the treasurer in a general account kept by the city with a national bank in which all moneys received by the city were deposited.  The city council in 1943, in addition to the appropriations above mentioned, transferred for the use of the cemetery from this general account in the national bank the sum of $3,400 which represented money that had come from the sales of lots.

The respondent is required by the provisions of St. 1884, c. 109, §§ 5, 6, as amended by St. 1892, c. 149, §§ 2, 3, to invest the trust funds in accordance with the directions of the board, to keep them separate from all other moneys of the city, and to receive the income subject to the order of the board.  The income is to be appropriated by the board in such manner as it shall deem best to promote the purposes for which the "said appropriation, grant, donation, gift or bequest was or is made."  The trust funds in the custody of the treasurer have been divided into five classes, depending upon the terms of the trust.  This classification has been maintained for many years.  The balances of all these trust funds remaining after investments were made under the direction of the board have been deposited in a savings bank.  G. L. (Ter. Ed.) c. 44, § 54.  The trust funds in one of these classes, consisting of some five hundred trusts paid to the city for the perpetual care of burial lots, have been consolidated into a single savings bank account.  It has been the practice of the respondent to withdraw the interest on these various trust accounts at the direction of the board and to deposit the interest in a general account of the city, which was kept in a national bank and in which all revenue derived by the city was deposited.  While it could be found that the deposit of this trust income in this general account was made with the knowledge and assent of the board and that the respondent was acting in good faith, yet this income ought not to have been mingled with the general funds of the city.  It should have been kept separate, and was subject to the control and management of the board in accordance with the provisions of St. 1884, c. 109, §§ 5, 6, as amended by St. 1892, c. 149, §§ 2, 3.

The title to these funds is held by the city as trustee and not by the board, *Boston* v. *Dolan,* 298 Mass. 346, 349–352 (compare *Trustees of the Public Library of Melrose* v. *Melrose,* 316 Mass. 584, where the gift was made to the trustees and not to the municipality), and the city in accepting the trust must be held to the performance of the obligations of a trustee. The trust funds and income must be kept separate from other funds of the city. *Attorney General* v. *Lowell,* 246 Mass. 312, 324. *MacDonald* v. *Street Commissioners of Boston,* 268 Mass. 288, 296. *Adams* v. *Plunkett,* 274 Mass. 453, 462–463.

The authority of the board to direct the respondent to pay Akeson's bill out of the trust funds is not in issue. So far as appears from the record, the respondent was never directed to make such payment out of trust principal or income. On the contrary, this bill was presented by the board to the city auditor for his approval and for inclusion in the monthly warrant for payment of current municipal expenses in the usual course. Payment was withheld by the mayor and not by the respondent. All parties understood that payment was to be made, like any other current expense of the city, in the ordinary method adopted by the city in discharging such obligations. No one understood that payment was to be made out of trust funds. The petition, therefore, cannot be maintained because of any failure of the respondent to pay Akeson out of trust funds or income.

We now pass to a consideration of the petitioners' rights in the use of funds, other than trust funds, that were received by the city out of the sales of lots. The petitioners claim the right to expend these funds without any appropriation by the city by virtue of St. 1884, c. 109, § 4, which provides that proceeds from the sales of lots shall be paid into the city treasury, to be kept separate from other funds of the city and to "be devoted to the improvement and embellishment of said cemetery" under the direction of the board. But the power of the board to expend this revenue in the absence of an appropriation was taken away by St. 1928, c. 396, § 2, which provided that "All provisions of

special acts effective prior to January first, nineteen hundred and twenty-one which authorize the incurring of liabilities by any board or officer of a city, except Boston, or of a town without appropriation . . . are hereby repealed." That statute was enacted as an aid to what is now G. L. (Ter. Ed.) c. 44, commonly known as the municipal finance act, an act whose purposes have frequently been stated by this court. *Flood* v. *Hodges*, 231 Mass. 252. *McHenry* v. *Lawrence*, 295 Mass. 119. *Allen* v. *Cambridge*, 316 Mass. 351.

The judge properly found that the board was a municipal department. It was classified in the charter as an administrative board. Its members were appointed by the mayor and were accountable to him for the faithful discharge of their duties, which were the care and management of a parcel of real estate maintained by the city for a public purpose. The board was in charge of a department of the city. *Attorney General* v. *Tillinghast*, 203 Mass. 539. *Attorney General* v. *Andrew*, 206 Mass. 46. *Adams* v. *Selectmen of Northbridge*, 253 Mass. 408. *Robertson* v. *Commissioner of Civil Service*, 259 Mass. 447. *Trustees of the Boston Public Library* v. *Rector of Trinity Church*, 263 Mass. 173, 179. *Eastern Massachusetts Street Railway* v. *Mayor of Fall River*, 308 Mass. 232, 234.

Being a department of the city, the board could not incur an indebtedness in excess of the appropriation made for that department, with certain exceptions not now material. G. L. (Ter. Ed.) c. 44, § 31. The board was required by St. 1884, c. 109, § 4, to pay the proceeds from sales of lots or rights of burial into the city treasury, and the sums paid in could not be expended by the board without an appropriation therefor by the mayor and city council. G. L. (Ter. Ed.) c. 44, § 53. The judge found that Akeson had no enforceable claim against the city because, at the time the board made the alleged contract with him, the board had not secured an appropriation sufficient to cover the expenditure to be incurred. There was evidence that, when this contract was made, the unexpended balance of the expense appropriation for the cemetery was insufficient to pay the

amount involved in the contract. Findings of fact made on oral testimony in proceedings at law cannot be reversed unless they cannot be supported by the evidence together with reasonable inferences from the evidence. *McKenna* v. *Andreassi,* 292 Mass. 213. *Codman* v. *Beane,* 312 Mass. 570. *First National Stores Inc.* v. *H. P. Welch Co.* 316 Mass. 147. His further conclusion that the Akeson contract was "not legally entered into" was right. *Parkhurst* v. *Revere,* 263 Mass. 364. *Dyer* v. *Boston,* 272 Mass. 265, 274. *McHenry* v. *Lawrence,* 295 Mass. 119, 122–123. *McCarthy* v. *Malden,* 303 Mass. 563, 567. *Anchor Steel Co.* v. *Granville,* 318 Mass. 688.

The proceeds from the sales of lots and from rights of burial in this cemetery should not have been deposited in the general account of the city in which is deposited all revenue received by the city. They should have been kept in a separate account. St. 1884, c. 109, § 4.

It follows that the judgment dismissing the petition is reversed and the case is remanded to the Superior Court where judgment is to be entered ordering the writ to issue commanding the respondent to keep said proceeds and the income from the trust funds separate from all other funds of the city.

*So ordered.*