MAYOR OF HAVERHILL vs. WATER COMMISSIONERS
OF HAVERHILL.

Essex.    February 6, June 24, 1946. — June 29, 1946.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Haverhill.  Municipal Corporations,* Municipal finance, Charter, Department, Officers and agents.  *Statute,* Supersedure.  *Custom.*

St. 1891, c. 348;  St. 1892, c. 417;  and St. 1896, c. 433, were in substance amendments to the charter of the city of Haverhill relating to its water department as a department of the city and were not a charter to the board of water commissioners as a quasi municipal corporation.

The treasurer of the city of Haverhill and not its board of water commissioners has been and is entitled to the custody of its water revenues by reason of Pub. Sts. c. 27, § 105, and its successors, now G. L. (Ter. Ed.) c. 41, § 35, as amended, which have not been overridden by St. 1891, c. 348;  St. 1892, c. 417;  and St. 1896, c. 433, relating to the water supply and water department of the city.

A usage or custom respecting the custody of certain revenues of a municipality would be of no effect if contrary to G. L. (Ter. Ed.) c. 41, § 35, as amended, and its predecessors.

PETITION, filed in the Superior Court on October 29, 1945.

The case was reported by *Buttrick,* J.

*W. C. McDonald,* City Solicitor, for the petitioner.

*F. H. Magison,* for the respondents.

WILKINS, J.  This is a petition for a writ of mandamus to require the respondent board of water commissioners to turn over all moneys received by it to the treasurer of the city of Haverhill.  The case was submitted on a statement of agreed facts to a judge of the Superior Court, who, at the request of the parties, reported the case for the determination of this court.  G. L. (Ter. Ed.) c. 213, § 1B, added by St. 1939, c. 257, § 1; c. 231, § 111.  See *Codman* v. *Assessors of Westwood,* 309 Mass. 433, 434.  It was agreed that the respondent board from time to time receives moneys due from the inhabitants of Haverhill for water service which are deposited in the name of "Haverhill Water Works," and has refused to turn them over to the city treasurer upon

demand. It was also agreed that, if the funds should be turned over, "they will be used for any purpose allowed by law."

The city charter of Haverhill, St. 1869, c. 61, as amended by St. 1908, c. 574, provides for a governing body known as the municipal council, consisting of the mayor and four aldermen. St. 1908, c. 574, § 19. There is no reference to water supply or water service in the foregoing statutes. That subject is covered by three other enactments: St. 1891, c. 348, entitled "An Act relating to the water supply of the city of Haverhill"; St. 1892, c. 417, entitled "An Act for the protection of the water supply of the city of Haverhill"; and St. 1896, c. 433, entitled "An Act relative to the board of water commissioners and the water supply of the city of Haverhill." It was provided in St. 1891, c. 348, that "If the city of Haverhill shall hereafter purchase or take the franchises, rights and property of the Haverhill Aqueduct Company, . . . it shall thereupon have the sole, exclusive and perpetual right to hold the waters of . . . [certain named] great ponds within said city of Haverhill, as a source of water supply, with full power and authority to convey the water of said ponds through said city for the use of said city and the inhabitants thereof, for the extinguishment of fires and for domestic and other purposes, with full power and authority . . . to regulate the use of water and to establish the rates to be paid therefor, and collect the same by process of law" (§ 1). Payments for the use of water are "to be collected in an action of contract in the name of the city" (§ 9). Persons guilty of certain acts of interference with the water supply "shall forfeit and pay to said city three times the amount of damage assessed therefor, to be recovered in an action of tort" (§ 8). The various powers and duties under the act are those of the city: the taking of property (§ 1); the filing of descriptions of such property in the registry of deeds (to be accompanied by a statement of the purposes of the taking signed by the water commissioners hereinafter referred to) (§ 2); the payment of damages sustained by a taking of property "or by any other thing done by the city under the authority of this act"

(§ 3); and the issue and sale of bonds, notes, and scrip "for the purpose of paying the necessary expenses and liabilities incurred under the provisions of this act" (§ 6). The act was to become effective upon acceptance by the city council (§ 11). In St. 1892, c. 417, the city was authorized to take other lands necessary for the protection of the watersheds. "The title to all land taken or purchased under the provisions of this act shall vest in said city, and the land taken may be managed, improved and controlled by the board of water commissioners, in such manner as they shall deem for the best interests of said city" (§ 1). Takings were to be governed by the applicable provisions of St. 1891, c. 348, and the city was authorized to issue bonds, notes, and scrip for expenses and liabilities incurred subject to the provisions of St. 1891, c. 348, §§ 6, 7. "All the powers and duties granted to and imposed upon the city of Haverhill by this act, including the control and management of the franchise, rights and property of the Haverhill Aqueduct Company, . . . except the right to issue bonds, notes or scrip . . . shall be exercised by a board of water commissioners, consisting of five residents of the city to be appointed by the mayor with the approval of the city council" for five year terms. "No person shall be appointed commissioner who holds at the time any city office by popular election. Any commissioner, after due notice and hearing, may be removed at any time by a two thirds vote of each branch of the city council, for any cause which shall be deemed sufficient and shall be expressed in the vote of removal." Compensation may be voted the water commissioners by the municipal council.[1] St. 1891, c. 348, § 5, as amended by St. 1896, c. 433, § 5. "The board of water commissioners of the city of Haverhill shall fix the prices or rents for the use of water supplied annually; and the income received therefrom, after deducting all expenses and charges of distribution, shall be applied, — first, to the payment of the interest on the bonds issued on account of said water supply; second, to the payment of sinking funds requirements for loans . . . ; third,

[1] See St. 1908, c. 574, § 19.

to the payment of all current expenses of said board of water commissioners; fourth, the balance, if any, may be applied to the sinking funds for said loans, in the discretion of the board of water commissioners. The said board of water commissioners may expend from the annual receipts for the purpose of new construction a sum not exceeding twenty thousand dollars in any one year." The commissioners of sinking funds of the city are made trustees of a sinking fund "set apart for the payment and redemption of said water loan." If after the payment of bond interest and current expenses, the surplus does not equal two per cent of the total amount of the bonds, notes, and scrip, "the city shall raise by general taxation a sum which with the surplus shall equal said two per cent., and shall contribute said sum to the sinking fund." St. 1891, c. 348, § 7, as amended by St. 1896, c. 433, § 6. Other provisions were added by St. 1896, c. 433. The board of water commissioners shall render to the municipal council [1] "annually, a report of its doings, including a statement of its receipts and expenditures" (§ 1). "The accounts of said board shall be audited annually by the city auditor" (§ 2). The board by unanimous vote with the approval of the municipal council [1] "shall have full power and authority to sell any real estate under the charge of the water department" and "to execute and deliver on behalf of the city" deeds or other instruments (§§ 3, 4). With reference to St. 1892, c. 417, § 1, "All the powers and duties granted to and imposed upon the city of Haverhill by this act shall be exercised by the board of water commissioners" (§ 7).

It is clear that the statutes relating to the water supply and the board of water commissioners are not a charter issued to that board, but are, in the words of St. 1896, c. 433, § 3, provisions relating to "the water department." This means "the water department" of the city, and such statutes are in substance and effect, although not so entitled, amendments to the city charter. Nothing contrary to this conclusion is to be deduced from the fact that in 1891 there

---

[1] See St. 1908, c. 574, § 19.

was a general statute (Pub. Sts. c. 27, §§ 27–31) authorizing municipalities to purchase "water-rights, estates, franchises, and privileges" of other corporations, but containing financing and other provisions quite unlike those contained in St. 1891, c. 348. Compare, however, *Assessors of Boston* v. *Boston, Revere Beach & Lynn Railroad*, 319 Mass. 378, 380.

The main question for decision is whether the moneys received by the respondent board are subject to G. L. (Ter. Ed.) c. 41, § 35, as amended, which requires every treasurer of a municipality to give bond for the faithful performance of his duties, and provides, "He shall receive and take charge of all money belonging to the town, and pay over an account for the same according to the order of the town or of its authorized officers. No other person shall pay any bill of any department." As no reference to the custody of funds or to the bonding of a custodian of funds is found in St. 1891, c. 348, St. 1892, c. 417, and St. 1896, c. 433, we must first consider G. L. (Ter. Ed.) c. 41, § 35, in the form in which it stood when the three Haverhill water supply statutes were passed. Section 35 was then contained in Pub. Sts. c. 27, § 105, which read: "The town treasurer shall give bond in such sum as the selectmen require, with sureties to their satisfaction, for the faithful discharge of the duties of his office; shall receive and take charge of all money belonging to his town, and shall pay over and account for the same according to the order of such town or of the officers thereof duly authorized in that behalf." This applied to cities. Pub. Sts. c. 28, § 2. As to the city of Haverhill, see St. 1869, c. 61, §§ 2, 12, 18. The substance of Pub. Sts. c. 27, § 105, except the requirement of a bond, goes back to very early times. It had origin in St. 1699–1700, c. 12. See Charters and General Laws of the Colony and Province of Massachusetts Bay, page 341. It was substantially reënacted along with the requirement of a bond in the general revisions of our statutes. Rev. Sts. c. 15, §§ 58, 64. Gen. Sts. c. 18, §§ 54, 59. Pub. Sts. c. 27, §§ 105, 110. See R. L. c. 25, § 72.

The respondent board contends that the language of the

Haverhill water supply statutes shows a legislative intent that the provisions of Pub. Sts. c. 27, § 105 (now G. L. [Ter. Ed.] c. 41, § 35, as amended), should not apply to the moneys received for water service. This is, in effect, a contention that § 105 was impliedly superseded pro tanto by the Haverhill water supply statutes. "'A statute is not to be deemed to repeal or supersede a prior statute in whole or in part in the absence of express words to that effect or of clear implication.' *Cohen* v. *Price*, 273 Mass. 303, 309. *Commonwealth* v. *Bloomberg*, 302 Mass. 349, 352." *Hinckley* v. *Retirement Board of Gloucester*, 316 Mass. 496, 500. This principle is particularly applicable where the prior statute is of long standing, of uniform application to municipalities, and designed to safeguard public funds.

We are of opinion that the Haverhill water supply statutes do not by clear implication require that the funds, which are "money belonging to the town," should be kept by the respondent board, rather than by the treasurer as prescribed in general for all cities and towns by Pub. Sts. c. 27, § 105. Much of the argument of the respondent board founded upon the theory that the water board is not a department of the city, but is in the nature of a quasi-municipal corporation, is inapposite. No ground for dispensing with the bonded treasurer as custodian of the water funds is perceived in the provisions of St. 1891, c. 348, § 7, as amended by St. 1896, c. 433, § 6, which established the order in which obligations should be met out of the net water prices or rents after deducting distribution expense. The reference therein to the current expenses of the board is not a recognition that the board should have in its possession receipts with power to use them to defray certain necessary expenses; and the provision that the board "may expend from the annual receipts for the purpose of new construction a sum not exceeding twenty thousand dollars in any one year" is a limitation of the power of the board to affect the tax rate and is not an expression of an intention that the treasurer should not hold the funds. The same is true of the requirements, added by St. 1896, c. 433, §§ 1 and 2, five years after the creation of the water board, of

an annual report of receipts and expenditures to the municipal council and of an annual audit of the accounts by the auditor. Neither the vesting of the control and management of the department in the water board nor its general powers are incompatible with the custody of the funds by the treasurer. See *Nelson* v. *Georgetown,* 190 Mass. 225, 229; *Boston* v. *Dolan,* 298 Mass. 346. Nothing to the contrary is contained in such cases as *Muldoon* v. *Lowell,* 178 Mass. 134, *Bowers* v. *Selectmen of Needham,* 216 Mass. 422, *Whiting* v. *Mayor of Holyoke,* 272 Mass. 116, and *Leonard* v. *School Committee of Springfield,* 241 Mass. 325. We are not dealing with an interference with the respondent board in the exercise of its rightful powers. Cases like *Trustees of the Public Library of Melrose* v. *Melrose,* 316 Mass. 584, where title was in trustees and not in the municipality, are to be distinguished. See *Commissioners of Woburn Cemetery* v. *Treasurer of Woburn,* 319 Mass. 86.

As the respondent board from the outset was never empowered to hold the moneys, there is no occasion to discuss St. 1920, c. 591, § 6, in which first appeared the provision, "No other person shall pay any bill of any department," now found in G. L. (Ter. Ed.) c. 41, § 35, as amended. Likewise we need not discuss St. 1920, c. 591, § 7, which reads in part, "All moneys received by any town officer or department, except as otherwise provided by special acts . . . shall be paid by such officer or department upon their receipt into the town treasury," and is now found in G. L. (Ter. Ed.) c. 44, § 53.

The agreed fact that, if the funds should be turned over, "they will be used for any purpose allowed by law," is immaterial to the question of law here determined. It does not sustain the allegation of the answer that the petition was not brought in good faith, and it surely does not mean that payment will not be made as required by St. 1896, c. 433, § 6. If the treasurer is, in any event, entitled to hold the funds, they must be given to him. Nor is it of importance to consider the city ordinances or the omission of the city to pass an ordinance empowering the city collector to collect water accounts, as permitted by G. L.

(Ter. Ed.) c. 41, § 38A, as amended. It is likewise of no consequence what may have been the usage of the city. A usage contrary to statute is void. *Scola* v. *Scola*, 318 Mass. 1, 7, and cases cited.

Judgment is to be entered ordering the writ to issue commanding the respondent board to turn over to the city treasurer all moneys received by it for water service.

*So ordered.*