WILLIAM E. POWERS, *Atty. Gen., ex rel.* JOSEPH A. LABELLE

*vs.* JOSEPH A. MONAHAN, JR.

MAY 29, 1957.

PRESENT: Condon, Roberts, Andrews and Paolino, JJ.

CONDON, J. This is a petition in equity in the nature of quo warranto to determine the lawful holder of the office of highway surveyor in the town of Narragansett.

We heard the case on an agreed statement of facts. It appears therefrom that Joseph A. LaBelle and Joseph A. Monahan, Jr., hereinafter referred to respectively as the relator and the respondent, were candidates for the office in question at the general election held on November 6, 1956. It further appears that the relator received 803 votes and the respondent 797; that 82 civilian absentee and shut-in votes were also cast but were not counted, because 75 were cast before election day and 7 could not be allocated to either candidate on account of the fact that the ballots had been separated from the envelopes in which they were received and it was thus impossible to determine which 7 ballots out of the 82 had been legally cast on election day.

It also appears that the state board of elections directed the board of canvassers to count only such civilian absentee and shut-in ballots as they could determine had been voted on election day; that they rejected one civilian absentee ballot, one civilian shut-in ballot, and one war ballot, all of which had been marked, identified, and segregated during the count by the board of canvassers; that said board decided there had been no election of highway surveyor, since there were 7 civilian absentee and shut-in ballots which could affect the result of the election if it were possible to ascertain them; and that on February 8, 1957 they so reported to the town council which on the same day in special executive session elected respondent on the authority of general laws 1938, chapter 332, §9.

On February 11, the next business day, over the protest of the relator who was the incumbent, respondent took possession of the office and since has kept the relator out of possession thereof. The relator contends that respondent's purported election is illegal, and that he thereby usurps and unlawfully withholds the office from him, the rightful holder.

The relator relies on the following grounds to establish the superior strength of his title over that of respondent. He contends that civilian absentee and shut-in ballots are not authorized in a municipal election and therefore neither the state board nor the board of canvassers may validly count any of them; that if they may be validly cast the general assembly may constitutionally authorize them to be cast *before election day,* since the case of *Roberts* v. *Board of Elections,* 85 R. I. 203, 129 A.2d 330, does not apply to municipal elections; that the board of canvassers erred in rejecting the three segregated ballots; and that if they were legally rejected and there was no valid election as the board of canvassers decided, nevertheless the town council had no authority to elect respondent, since in such a case it is provided by G. L. 1938, chap. 315, §2, that the

polls may be reopened and a new election by the people had until a choice is made by them.

In support of his first ground, the relator contends that there is no statute which implements the constitutional amendment authorizing civilian absentees and shut-ins to vote so far as *municipal* elections are concerned. We cannot agree with that contention. It is true that the general assembly has failed to provide in detail for the counting of such ballots as it did in implementing article XXII of amendments to the state constitution authorizing the casting and counting of war ballots in municipal elections, but we think we should liberally construe the existing statutes so as to save all of such ballots, if it is constitutionally possible to do so, for the same reasons as given in *Roberts* v. *Board of Elections, supra.*

By enacting public laws 1953, chap. 3204, secs. 7½ and 7½A, the legislature apparently assumed that it had implemented the constitutional amendment authorizing civilian absentees and shut-ins to vote in municipal elections. We concede that a construction based on such an assumption is not easily made and in some circumstances in a future election may not be reasonably possible to apply. For that reason it would be eminently desirable if the general assembly would clarify the statutes to prevent any untoward result in the future. However, we now hold that there is at least an indirect implementation of such amendment in the existing statutes which reasonably warrants the receiving and counting of civilian absentee and shut-in ballots in municipal elections.

The relator's second ground is well taken. The general assembly has full power to prescribe the time and manner of holding *municipal* elections. *Opinion to the House of Representatives,* 80 R. I. 288. Insofar as those elections are concerned, the general assembly is not limited in the exercise of such power as it is in providing for the election of state officers under article XVI of amendments to the

state constitution. Nor does article XXIII of amendments, in conferring upon civilian absentee and shut-in voters the right to vote in *municipal* elections, place any restrictions upon the plenary power of the general assembly over the conduct of such elections.

We are therefore of the opinion that under G. L. 1938, chap. 319, as amended, all civilian absentee and shut-in ballots, whether voted on or before election day on November 6, 1956 for the *municipal* office of highway surveyor, are valid ballots and unless otherwise defective should be received and counted. Hence the state board of elections erred in directing the board of canvassers to count only those ballots cast on election day. In doing so it gave too broad an interpretation to our holding in *Roberts* v. *Board of Elections, supra,* and one not at all warranted by the language in that opinion.

It appears from the agreed statement of facts that the board of canvassers tabulated the 82 civilian absentee and shut-in ballots as follows: LaBelle 38, Monahan 44. By adding those totals to the totals of machine votes and war ballots for each candidate the final tabulation stands: LaBelle 841, Monahan 841. However, there remains to be considered the three contested ballots. Those ballots were apparently voted in favor of LaBelle but were rejected because of the manner in which the voter marked his ballot. If all of such ballots were properly rejected the election would have resulted in a tie and the question would then arise whether, in the circumstances, the town council was authorized to elect a highway surveyor or whether the polls should be reopened to permit the people to do so.

On our view of the disputed ballots it will not be necessary to determine that issue. The rejected war ballot appears to be a valid vote for LaBelle. The voter avoided the party circles and placed his cross in the square opposite the name of each candidate for whom he desired to vote. In placing his cross in the square opposite the name of the

Democrat candidate for first councilman his pen apparently made an ink blot under the cross. All of his other crosses in the squares opposite the names of candidates for whom he voted, including the name of Joseph A. LaBelle, were clearly marked within the square and were without blemish.

In our opinion the intent of the voter is clear and we do not think that the aforementioned blot can reasonably be considered a distinguishing mark within the meaning of the statute so as to vitiate the ballot. The board of canvassers clearly erred in rejecting it since P. L. 1944, chap. 1470, sec. 20, provides: "Where, because of any defect in marking, a ballot is held invalid as to any particular candidate for office, it shall remain valid as to the candidates for other offices. * * * No defect in the marking of a cross shall invalidate any ballot or a vote for any candidate, where the intention of the voter is clearly indicated."

The two civilian absentee and shut-in ballots present a more difficult problem. On one ballot the voter placed his cross in the square opposite the name of every Democrat candidate except the candidate for second school committee member. He drew a line through the name of that candidate and placed a cross in the square opposite the name of the Republican candidate. He also placed a cross in the Republican circle under the eagle and drew a line through the name of each Republican candidate except the candidate for second school committee member. This is the hard way but nevertheless the correct way to vote a straight Democrat ticket except for the candidate for school committee. It would have been easier for the voter to place his cross in the Democrat circle under the star and draw a line through the name of that particular Democrat candidate.

However, the voter in this instance did something else which makes his ballot somewhat questionable. He drew a line through the cross in the Republican circle apparently

intending thereby to cancel such cross in the mistaken belief that he had to do this to save his ballot. In doing so he has raised a question whether such line is a distinguishing mark. Under the old law we think it would be, but under the present statute and in the circumstances here we are of the opinion that such a line drawn through the cross in the circle is so obviously an attempt by the voter to correct an innocent mistake that it is not a distinguishing mark that clearly tends to identify the voter in violation of the election law. Hence the board of canvassers erred in rejecting this ballot which should have been counted for LaBelle.

The other ballot contains a cross in the Democrat circle under the star, two crossed lines partly through the name of the Democrat candidate for town sergeant, and a cross in the square opposite the name of his Republican opponent. There is also a cross in the square opposite the name of respondent Joseph A. Monahan, Jr., Republican candidate for highway surveyor, with three horizontal lines drawn through such cross. A small arrow points thereto with the words "omit [underlined]—vote goes to LaBelle" written opposite the square.

Again, this appears to be an attempt by the voter to correct an innocent mistake but in this instance he has done something more than merely place canceling marks on such mistake. He has written a message on the ballot. This he may not do even though the purport of such message be to confirm the correction of his mistake and show his true intent. Handwriting may be a means of identifying a voter. In any event the statute cannot reasonably be construed to tolerate handwriting on the ballot, whatever may be the purpose, except where the voter exercises his right to write in the name of a person as a candidate in the place on the ballot provided by law. This ballot was rightly rejected by the board of canvassers.

By adding to the relator's total the two rejected ballots,

which we have held above should have been counted, he was elected by a majority of two votes. We decide, therefore, that the relator Joseph A. LaBelle is legally entitled to hold the office of highway surveyor of the town of Narragansett for the term for which he was elected according to law and that the respondent Joseph A. Monahan, Jr. is usurping such office and has no valid title thereto.

The petition is therefore granted, and on June 5, 1957 a decree in accordance with this opinion may be presented for entry by the court.

*Letts & Quinn, Daniel J. Murray, Jerome B. Spunt, Domenic A. DiSandro, Jr.,* for petitioner.

*Jackvony & De Conti, Louis A. Jackvony, Jr.,* for respondent.