JOHN H. McGANN *vs.* BOARD OF ELECTIONS *et al.*

FEBRUARY 13 as of JANUARY 1, 1957.

PRESENT: Flynn, C. J., Condon, Andrews and Paolino, JJ.

PAOLINO, J. This is a petition for certiorari to review and quash the record of the state board of elections declaring Alexander G. Teitz elected representative in the general assembly from the third representative district of the city of Newport at the general election held on November 6, 1956.

After the petition was filed Alexander G. Teitz, hereinafter referred to as the intervenor, requested an opportunity to be heard before we issued the writ. However, an examination of the allegations of the petition, which was sworn to, made it manifest that the legal and constitutional issues raised were so substantial that we were constrained to issue the writ forthwith. However, in order to give the intervenor an opportunity to be heard, as he had requested, we departed from our regular practice in such cases and included only a temporary restraining order and after notice to him assigned the case specially for a hearing thereon. At such hearing, however, neither he nor his counsel appeared and we thereupon continued the restraining order in effect until the merits of the petition were determined.

The respondent board, in compliance with the writ of certiorari, made due return of its records pertaining to the election in question. Thereafter the intervenor duly filed a motion to intervene and to take over the defense to the petition. In open court the respondent board by its counsel consented thereto and thereupon we granted the motion.

The intervenor however did not file any answer or plea to the petition for certiorari. Therefore the truth of the facts alleged therein are undisputed. But he did file a motion to dismiss such petition on the ground that this court has no jurisdiction over the subject matter thereof. The cause was thereupon set down for hearing to a day certain on both the motion to dismiss and on the merits of the petition.

Before considering the motion to dismiss, we shall state briefly the undisputed facts as they appear in the record of the instant case. A biennial general election was held in Rhode Island on Tuesday, November 6, 1956, in pursuance of the provisions of article XVI of amendments to the constitution of this state. Section 1 of said article provides: "The governor, lieutenant-governor, secretary of state, attorney-general, general treasurer, and senators and representatives in the general assembly, shall be elected at town, ward and district meetings *on the Tuesday next after the first Monday in November,* biennially, commencing A. D. 1912 * * *." (italics ours)

At the general election on November 6, 1956 the petitioner was the Democratic candidate for representative in the general assembly from the third representative district of the city of Newport, and the intervenor was the Republican candidate for said office.

On election day petitioner received on the voting machines in the polling places throughout said third representative district 1,407 votes and the intervenor received 1,381 votes. In addition thereto each received a certain number of votes cast by members of the armed forces and the mer-

chant marine of the United States in active service and absent from the state under article XXII of amendments to the constitution. None of such votes is in dispute and 29 of them were counted for the petitioner and 45 for the intervenor. Therefore the total uncontested votes for each candidate then stood as follows: 1,436 for petitioner and 1,426 for the intervenor. On the basis of these admittedly valid votes petitioner had a clear majority of 10 votes and if there were no other votes *legally* cast by qualified electors the board should have declared petitioner elected.

The procedure adopted by the board was substantially as follows. It first tabulated the state election returns of the votes cast on election day on the voting machines. It next proceeded to count certain ballots cast by electors absent from the state and hereinafter referred to as civilian absentee voters. Then it proceeded to count certain other ballots cast by electors described in article XXIII of amendments to our constitution as electors otherwise qualified "who, by reason of old age, physical disability, illness or for other physical infirmities" were unable to vote in person although within the state. These will be referred to herein as shut-ins. The final step in the process was the counting of the war ballots, so called, which were cast outside the state by members of the armed forces and merchant marine by virtue of article XXII of amendments to our constitution. These war ballots are not in dispute here.

Before the count of all classes of ballots was finally completed by the board and prior to the declaration of the result of such count, petitioner challenged *all* of the civilian absentee and shut-in ballots on the ground that they were unconstitutional. He accordingly objected to the counting of any of such ballots by the board in the tabulation of the votes for the aforesaid candidates and requested that none of said votes be considered or counted by the board in arriving at the result of said election. At the same time the petitioner requested the board to segregate and mark for

identification the inner envelopes, which contained the ballots cast by the civilian absentee and shut-in voters at said election. These envelopes by their color and by the jurat or official acknowledgment carried on the face thereof their own identification and separation as to the time and place of voting. The same request was made as to the outer envelopes and further as to all civilian absentee and shut-in ballots cast in said election. In this last respect, as will appear later in this opinion, petitioner did more than was required of him in order to raise the constitutional and jurisdictional issues here involved.

The petitioner protested before the board that it should not count any of such civilian absentee or shut-in ballots on the ground that article XXIII of amendments was not self-executing; that there was no valid legislation implementing it so as to validate the votes of these two classes of electors; and further that certain attempted amendatory legislation under which the ballots had been issued to said civilian absentees and shut-ins was unconstitutional. The board, however, in denying petitioner's motion that said civilian absentee and shut-in ballots be not counted stated that they had no authority or jurisdiction to consider and determine constitutional questions. They took the view that it was their duty to carry out the literal language of the law as purportedly amended and to count all such ballots, unless and until this court declared those statutes and votes to be unconstitutional.

The board thereupon proceeded to count and tabulate all the civilian absentee and shut-in ballots. Some of these, as clearly shown on the face of the inner envelopes in which the ballots were contained, were cast *on* election day and admittedly others showed they were cast *before* election day. By counting all such ballots, regardless of whether they were voted on or before election day, the board determined that the total votes cast for each candidate then stood as follows: 1,490 votes for petitioner and 1,561 votes for

the intervenor, thus showing an apparent majority of 71 votes for the intervenor. On that basis the board declared the intervenor elected.

The petitioner thereupon promptly filed the instant petition and as stated sought and received a stay of the issuance by the board of a certificate of election to the intervenor until this court could determine the question of constitutional law, on which depended not only the validity of the civilian absentee and shut-in ballots but also the jurisdiction of the board to count them. Because of the importance of the issue involved we peremptorily assigned the case for a special hearing on the earliest possible date consistent with the right of counsel to make reasonable preparation.

The intervenor as stated has filed a motion to dismiss the petition on the ground that this court has no jurisdiction over the subject matter of the petition, or, in the alternative, if it has jurisdiction it ought not, in the special circumstances of this case, exercise its power. He bases this contention entirely on the provisions of article IV, sec. 6, of our state constitution which provides in part: "Each house shall be the judge of the elections and qualifications of its members * * *." It is true that in our system of government pursuant to the above constitutional amendment each house of the general assembly is the *final* judge of the elections and qualifications of its members. However, in the instant case we are not concerned with the ultimate issue of the seating or not seating of the petitioner or the intervenor. Nor are we called upon to decide the power of either branch of the general assembly in that regard.

On the contrary we are confronted with a fundamental question of constitutional law which was raised on the record before the board completed the count and in this petition. In both places petitioner expressly challenged the constitutional right of the civilian absentee and shut-in electors to vote at all and also the jurisdiction of the respond-

ent board to count any of the ballots cast by such classes of electors.

Consequently the issues thus raised on the record present questions of constitutional and fundamental law and are therefore within the court's exclusive jurisdiction. R. I. Const. art. X, sec. 1, and art. XII of amendments, sec. 1. *Taylor & Co.* v. *Place,* 4 R. I. 324. Therefore neither branch of the general assembly has any authority to determine the constitutionality of its own enactments or the legal consequences of the application thereof.

Since 1893 the law has been well settled that jurisdiction of this court to pass upon questions of law in cases brought before it involving elections for senators and representatives in the general assembly is not affected by the constitutional provision that each house of the general assembly "shall be the judge of the elections and qualifications of its members * * *." *State* v. *Town Council,* 18 R. I. 258. In that case at page 263 this court stated: "Again, it does not follow from the fact that one tribunal is the ultimate judge of a question when it arises in reference to a matter proper for its decision, that another tribunal may not entertain the same question independently when called upon to decide its own action or to compel the action of parties lawfully in its jurisdiction; and the recurrence of the same question in both *fora* does not exclude from the jurisdiction of either tribunal a case normally within it."

In the same case at page 262 the court held: "Under the Constitution the action of each house with respect to the person claiming to be elected, is valid and final; but none of the steps by which that action was reached and none of the reasons assigned by either house, though they were spread by resolution upon its records, would have any force as declaring the law beyond the case then decided. Neither house of the legislature by itself can either make or authoritatively interpret the law as a rule for others. The making of the law under the Constitution requires the concurrent

vote of both houses and the declaration or authoritative interpretation of the law so as to form a precedent for subsequent cases, is for the courts. * * * The late Chief Justice Ames, in *Taylor* v. *Place,* 4 R. I. 324, says, p. 361: 'Neither the convention which framed the constitution, nor its members, nor the members of the general assembly, nor even the general assembly itself, can, *authoritatively* expound the Constitution, but only *the courts.'* "

The intervenor has not cited and we have not found any authority or case affecting state elections which we deem of sufficient pertinency and persuasiveness to cause us to depart from the well-established law on this issue as above enunciated. But intervenor relies strongly on a statement in *Corbett* v. *Naylor,* 25 R. I. 520, to the effect that each house of the general assembly being "the judge" of the elections and qualifications of its own members is therefore *the sole* judge thereof.

However, he overlooks several points in this regard. First, the case was in mandamus to compel performance of a duty of the respondent moderator to count ballots which he already had done according to law. Therefore any observation about the power of each house of the general assembly, if taken literally and comprehensively out of context, was entirely unnecessary for the decision and is obviously dicta. Secondly, if this statement is read in the light of the nature of the case and the admitted status thereof on its facts, all counting of ballots had been legally performed and the ballots themselves *according to existing law* had been returned to and were being held for the sole use of the general assembly. At such juncture the statement in question is understandably correct, because the issue at that time was entirely as to the seating or not seating by a house of the general assembly of its own member. As to that narrow issue each legislative branch can be said to be the sole judge of the elections and qualifications of its members. But that is far from saying that each house of the general assembly

is the *sole* judge to determine the constitutional right of certain classes of voters, the constitutionality and legal effect of its own statutes, and the jurisdiction of the board to count such civilian absentee and shut-in ballots. Finally if the court meant what intervenor argues, it is strange that the case of *State* v. *Town Council, supra,* was not even mentioned much less overruled, since three of the five judges in the case of *Corbett* v. *Naylor, supra,* also participated in the earlier decision only eleven years previously.

On the other hand there is an abundance of authorities elsewhere supporting the view which has been so well stated in *State* v. *Town Council, supra,* which was not overruled by *Corbett* v. *Naylor, supra,* and has been consistently followed here. For example see *State ex rel. Benton* v. *Elder,* 31 Neb. 169; *O'Ferrall* v. *Colby,* 2 Minn. 180; *People ex rel. Fuller* v. *Hilliard,* 29 Ill. 413; *People ex rel. Sherwood* v. *State Board of Canvassers,* 129 N. Y. 360; *State ex rel. Ingles* v. *Circuit Court of Spink County,* 63 S. D. 313.

It is therefore the unanimous opinion of this court that it has exclusive jurisdiction to hear the purely legal and constitutional issues in this case. Therefore the motion of the intervenor to dismiss the petition *for lack of jurisdiction in this court* is denied. Consequently we shall proceed to consider the merits of the allegations of the petition.

The petitioner here, as he did before the board, contended that the latter lacked jurisdiction to count any civilian absentee and shut-in ballots in determining the final results of the election in question. He based his contention on the ground that G. L. 1938, chap. 319, and all purported amendments thereto are unconstitutional in that they are in violation of section 1 of article XVI of amendments and because they are not in conformity with article XXIII of amendments to the constitution of this state. This objection was expressly made by petitioner before the counting of votes in this representative district was finally concluded and before the result of the election was declared. At the

same time petitioner requested that all civilian absentee and shut-in ballots, as well as the inner and outer envelopes in which they were received, be segregated and marked for identification by the board.

The intervenor, however, contends that we should not consider these constitutional questions on the ground that petitioner, by his failure before the board of elections to have the *ballots* marked for identification and segregated, is thereby barred from having the legal issues presented by the petition reviewed in this court. Inasmuch as there is a diversity of opinion among the members of this court on this point, we shall proceed to determine this issue before we consider the other contentions of the intervenor. The intervenor relies chiefly on *Brereton* v. *Board of Canvassers,* 55 R. I. 23, and cases cited therein in support of his contention that the petitioner's objection before the board was not timely.

The facts and issues in the *Brereton* case are completely different from those in the instant case. In the first place the issues in the *Brereton* case concerned questions whether or not ballots though legally cast were nevertheless defective because of the manner in which the voter had marked them. Secondly, these questions naturally required an inspection of the ballots and markings to determine their validity. Thirdly, in that case the petitioner admittedly made no objection or request of any kind before the board of canvassers at any time, but sought to make his record of protest for the first time in this court. Fourthly, this court specifically pointed out in that case that no question of a *lack* or *abuse* or *excess* of *jurisdiction* had been raised by the petitioner therein either before the board of canvassers or before this court. For these reasons this court found nothing to review legally and it quashed the writ of certiorari, which had theretofore issued on the basis of allegations in the petition but which at the hearing in this court admittedly did not stand the test of legal proof.

234

In the instant case we are confronted with a pure issue of constitutional law which was expressly raised on the record below, as to the right of civilian absentees and shut-ins to vote at all and as to the jurisdiction of the board to count any of the ballots allegedly cast by such electors. These issues are not to be confused with the question whether certain specific ballots, though cast legally, were or were not marked by the voter according to law. The petitioner before the completion of the count challenged the constitutional right to vote of all civilian absentee and shut-in electors and he further contended that *none* of the ballots cast by such electors should be counted because there is no valid statute implementing article XXIII of amendments and authorizing such ballots to be issued, cast and counted. Consequently a pure question of constitutional law was raised on the record and it must be determined, if at all, not by an examination of the ballots themselves, but rather by determination and application of pertinent constitutional and statutory provisions. Indeed an inspection of the ballots *as such* could not possibly aid the court in determining the constitutional and legal questions here involved and therefore their marking for identification would serve no useful purpose here.

The petitioner's claim of unconstitutionality also raises basically the question of the jurisdiction of the board of elections to count any of the civilian absentee and shut-in ballots. If the amendatory statutes in question are invalid, then the civilian absentee and shut-in electors had no legal right to vote in the first instance. It necessarily follows that the board likewise had no legal right or authority to count such ballots.

It is fundamental in our system of government under law that the question of jurisdiction over the subject matter can be raised at any time. In *Gorman* v. *Stillman*, 25 R. I. 55, it is stated at page 59 "that if the court should be convinced that it has no jurisdiction over the suit it ought to

dismiss the same at any stage of the proceedings. For, as said by Stiness, C. J., in *Hazard* v. *Coyle*, 22 R. I. 435: 'When a court has no jurisdiction of a cause, it should stop at any point where the fact appears.' " Continuing the court said: "Indeed, the court of its own motion should do this, because jurisdiction is the primary and indispensable thing in all judicial proceedings."

Likewise in *David* v. *David*, 47 R. I. 304, the court held at page 306: "The question of the lack of jurisdiction could be raised at any time on motion, and should be determined at the earliest stage of the proceedings if possible * * *; whenever it appears that the court has no jurisdiction the court of its own motion should stop the proceedings * * *." See also *State Loan Co.* v. *Barry*, 71 R. I. 188, where it is stated at page 189: "This court has consistently held that the question of jurisdiction over the *subject matter* may be raised at any time before judgment. *Streeter* v. *Millman*, 68 R. I. 456; *O'Neil* v. *Demers*, 44 R. I. 504." (italics ours)

In *O'Neil* v. *Demers, supra,* the court held that it was proper to entertain a motion in the supreme court to dismiss a complaint pending in the district court on the ground that the district court lacked jurisdiction. The case was then before the supreme court on a constitutional question certified from the district court of the sixth judicial district. After citing *Lace* v. *Smith*, 34 R. I. 1, as authority for dismissing the complaint even when the case was before it only on certification, it was stated at page 507 with reference to that case: "The court based its action upon the broad ground that a question of jurisdiction may be raised at any stage of the proceedings in a cause before judgment, and said, 'If the motion should be granted, the whole case including the constitutional questions raised therein, would terminate and cease to exist, therefore it becomes necessary to first inquire into the validity of the motion.' "

The same rule is followed generally in other jurisdictions. For example, in *Welton* v. *Hamilton*, 344 Ill. 82, the court

said at page 95: "It is contended by the appellees that the appellants waived the question of the constitutionality of the act because it was not raised by them at the hearing before the board of appeals. The question here presented is one of jurisdiction of the *subject matter,* and it is a principle which does not require the citation of authority that jurisdiction of the *subject matter* cannot be waived, or, as it is otherwise stated, cannot be conferred by consent of parties. * * * If a tribunal transcends the limits which the constitution or the law has prescribed for it and assumes to act where it has no jurisdiction its acts will be utterly void. Any act of a tribunal beyond its jurisdiction is null and void whether without its territorial jurisdiction or beyond its powers. * * * Want of jurisdiction may be taken advantage of by plea in abatement, and must be taken advantage of before making any plea to the merits, if at all, when it arises from formal defects in the process or when the want of jurisdiction is over the person, but where the cause of action is not within the jurisdiction granted by law to the tribunal it will dismiss the suit at any time when the fact comes to its notice." (italics ours)

See also *City of Gainesville* v. *Brown-Crummer Investment Co.,* 277 U. S. 54, where the supreme court of the United States in speaking of such jurisdiction said at page 59: "Of course a question of jurisdiction cannot be waived. Jurisdiction should affirmatively appear, and the question may be raised at any time."

The questions of estoppel, waiver and laches were not pleaded and strictly for that reason are not open to the intervenor. But even if pleaded it is well established generally that since the parties may not confer jurisdiction over the subject matter by agreement or consent, so they may not waive such jurisdiction by agreement or consent or conduct, especially where it concerns the constitutionality of a statute that affects the public interest. See 41 Am. Jur., Pleading, §159, pp. 403, 404, and cases cited.

Consequently after a careful examination of the issues raised by the motion to dismiss on the ground that petitioner did not make timely objection, it is the opinion of a majority of the court that his objection was raised on the record in time and that petitioner is properly here. Therefore the motion to dismiss is denied.

The main issues raised by the petition involve the constitutionality of G. L. 1938, chap. 319, as amended, which purported to give civilian absentee and shut-in electors a right to vote *before* election day. The petitioner contends that all such civilian absentee and shut-in ballots, even though conforming literally with the provisions of chap. 319, as amended, nevertheless were cast without valid constitutional or legislative authority. He also argues that article XXIII of amendments to the constitution of the state of Rhode Island expressly annulled article XXI of said amendments and thereby annulled all laws enacted pursuant thereto, and that therefore on November 6, 1956 there was no valid legislation enacted by the general assembly pursuant to power granted by said article XXIII.

He further contends that the power of the general assembly under article XXIII of amendments was limited by the same language which appeared in article XXI of amendments which was expressly annulled thereby; that such language of article XXI had been construed by the justices of this court in 1942 as not permitting absentee voting except *on election day;* that in the light of such opinion the people must be presumed to have used the language intentionally to limit the legislature as in article XXI; that after the adoption of article XXIII containing the language thus interpreted by the court, secs. 6 and 7½A of chap. 319, as amended, were nevertheless further amended in 1953 to provide for the first time for voting by civilian absentee and shut-in voters *on or before* election day; and that therefore in such respect both statutes were unconstitutional and void. In other words he contends that the constitu-

tional pattern and language used by the people in adopting article XXIII, following the interpretation of the same language appearing in article XXI, showed unquestionably an intention to limit the legislature so as to permit civilian absentees and shut-ins to vote *only on the day of election*.

On the other hand the intervenor contends that chap. 319, as amended, is constitutional, but that even if civilian absentee and shut-in ballots cast *before* election day should be deemed invalid, the statutory amendments are severable and, at least to the extent that they authorized ballots to be cast *on* election day, are valid; and that such ballots are legal and should be counted.

The constitutional questions thus raised by the instant petition and by the contentions of the parties are basically the same as those in the case of *Roberts* v. *Board of Elections*, 85 R. I. 203, 129 A.2d 330. In that case the issues and principles of law applicable thereto have been fully considdered. We therein held that a liberal construction should be applied to the amendatory acts passed subsequent to the adoption of article XXIII; that accordingly they could be treated as manifesting a legislative intention to implement such article by re-enacting the prior law by reference; and that in the circumstances such liberality was warranted in order to save as many of the civilian absentee and shut-in votes as was constitutionally possible.

For the reasons stated therein we are of the opinion that there is effective legislation implementing article XXIII to the extent that the board had authority to receive and count all ballots of civilian absentees and shut-ins provided they were cast *on election day*. We have considered the other contentions raised by the intervenor and we find them lacking in merit.

Mr. Justice Andrews, while dissenting on the ground that the petitioner because of his alleged failure to make a timely objection did not preserve the right to question here the constitutionality of the civilian absentee and shut-in

ballots, nevertheless agrees that if this issue is before us then the constitution authorizes the general assembly to permit voting by civilian absentee and shut-in voters *only* on election day.

The petition for certiorari is granted, the record of the action of the board in counting certain civilian absentee and shut-in ballots contained in inner envelopes whereon it was clearly established by the jurat or official acknowledgment that such ballots had been cast *before* election day, and the declaration of the result based thereon, are quashed. Pursuant to our decision in this matter heretofore filed on January 1, 1957, the records certified to this court are ordered returned to said board.

ANDREWS, J., dissenting. As is shown by the decision filed on January 1, 1957, I dissented on the ground that the petitioner had not preserved the right to question the validity of the absentee and shut-in ballots. I have had an opportunity to examine the extended opinion of the majority on this day filed but am unable to agree with it on this point.

General laws 1938, chapter 319, §7, as amended, provides that after the board of elections has received all the absentee ballots it shall proceed to process, count and preserve them as therein provided. Specifically, the board is directed to see if the name of the voter appearing on the envelope enclosing the ballot is on the check list, and having done so, to open the envelope, remove the ballot and, without looking at the inside of it, immediately deposit it in a covered box. The obvious purpose of the last requirement is to preserve the secrecy of the ballot. This procedure was followed by the board in counting all the absentee and shut-in ballots cast at the last general election and the two groups of lawyers representing the candidates for the two parties were given every opportunity to examine the envelopes before they were opened to see if the ballots in them were cast according to law.

Another candidate of the same party, the petitioner in *Roberts* v. *Board of Elections,* 85 R. I. 203, 129 A.2d 330, challenged 270 ballots because the envelopes containing them did not bear a notarial seal or its statutory equivalent as required by said chap. 319. In each case, the board, before opening the envelope, covered the voter's name with masking tape to preserve the secrecy of his ballot and then took out the ballot and gave it and its envelope the same number to preserve the identity of the ballot should this court be later asked to pass upon its validity. In view of the command of the statute, this was at least a proper way to preserve the identity of the ballot, for once the unidentified ballot was put into the locked box with the other ballots it could never be matched up with its equally unidentified envelope. When either party challenged a ballot on this or any other ground the same procedure was followed. Neither party objected to this procedure and neither can now object to it. The shut-in ballots and the objections thereto were handled in the same manner as the absentee ballots.

After all the absentee ballots had been counted, the result was made known and the same was done in regard to the shut-in ballots. It was not until about two weeks after all the absentee ballots had been counted and about a week after all the shut-in ballots had been counted that the petitioner for the first time objected to any of them on the ground that they had been cast under an unconstitutional statute. He then protested and moved that the board consider none of them in the final count. As stated by the majority, he did at that time request the board to have the inner envelopes which contained the ballots cast by absentee and shut-in voters at said election segregated and marked for identification.

When this case was decided on January 1, 1957, I thought this petitioner, like the petitioner in *Roberts* v. *Board of Elections,* 85 R. I. 203, 129 A.2d 330, had failed to ask the

board to identify the ballots at the time he made his motion to have them excluded from the final count. My mistake in this regard has recently come to my attention and I freely admit it, but as I then stated to my brethren and continue to maintain that the petitioner should have had the ballots and their envelopes marked for identification at the time the envelopes were opened long before he made his motion, my mistake is of no legal significance. Otherwise, I would abandon my dissent if such a thing is now possible.

A few days after he made his motion the petitioner filed this petition for certiorari and in his brief and oral argument before us contended that he had properly preserved the right to challenge *all* the absentee and shut-in ballots, relying *solely* upon the following quotation from the opinion in *Brereton* v. *Board of Canvassers,* 55 R. I. 23. I quote from page 5 of his brief immediately after he cites that case. "In that case the court said at page 30, citing with approval the case of *Adams* vs. *Glen,* 53 R. I. 41 and commenting upon the decision rendered in said case:

'Clearly the court then was of the opinion that in such proceedings only ballots, the rulings on which by the board of canvassers had been objected to before the board and which therefore should have been marked by the board for identification, should be considered by the court. Moreover, the view of the court then clearly indicates that if rulings of a board late in the counting of ballots of any election make one of the candidates wish to object to the ruling on any ballot previously counted or rejected, he still can and should make such objection and have the ballot marked for identification at any time before the counting is finally concluded and the decision made.' "

I do not read the rule of the quotation from the *Brereton* case to mean that a candidate can delay asking the board to identify ballots until a time when it cannot do so because of his earlier failure to have them identified when they could have been identified. And this is so, although at the time of the late request the ballots are still in the custody

of the board and it is still counting ballots. That is just the situation in this case.

Further on in the *Brereton* opinion the court gave what has always seemed to me its reasons for the rule of the quotation when it said, pp. 31, 32, that to have the marking, segregation and rulings made in this court would be to make this court a super counting tribunal rather than a reviewing one and so it would not allow these things to be done there for the first time.

Had the petitioner challenged each ballot when its envelope plainly showed on its face when it had been cast and had such ballot and its envelope been identified with the same mark, as was done in the case of the 270 ballots, the board could at any time while the ballots were in its custody have determined for which of the contestants the good and bad ballots were cast, *for it is for that ultimate purpose that identification is required.*

The motion was to have *all* ballots disregarded in the final count and since some of them were entitled to be counted, said motion was too broad and was properly denied. *Hampson* v. *Taylor,* 15 R. I. 83, 87 (1885).

When the petitioner made his late motion doubtless he thought that *all* ballots were bad just as he doubtless thought that *all* the ballots were good when he failed to have them identified when identification could have been made but the fact that he was wrong in both instances does not change the vital fact that the ballots cast *before* election day were bad and those cast on election day were good. Courts do not make the law; they only declare what it was at the crucial time in the past. These ballots were always good or bad depending upon the time they were cast.

But the majority holds that the *Brereton* case does not rule this case on this point. It says in part: "The petitioner's claim of unconstitutionality also raises basically the question of the jurisdiction of the board of elections to count any of the civilian absentee and shut-in ballots. If

the amendatory statutes in question are invalid, then the civilian absentee and shut-in electors had no legal right to vote in the first instance. It necessarily follows that the board likewise had no legal right or authority to count such ballots. It is fundamental in our system of government under law that the question of jurisdiction over the subject matter can be raised at any time."

I respectfully disagree with the majority that the petitioner raised the question of the *jurisdiction* of the board to count the ballots. He simply attacked the validity of the ballots which had long before been counted without objection by him—two profoundly different legal situations. It is abundantly clear that he did not consider that he had raised a jurisdictional question for he relied *solely* upon the *Brereton* case which did not involve jurisdiction. Nevertheless there can be no question of the right of the majority to reject the position taken on this point by the lawyers for both parties and to decide it on any ground it chooses. Neither can there be any question of the right of an appellate court to dismiss a case for lack of jurisdiction in the lower court over the subject matter and this too without being asked so to do.

I take this occasion to state that when this case was decided on January 1, 1957, the majority raised the question of lack of jurisdiction and rested its decision on this point of a lack of jurisdiction and that I then expressed my disagreement with its position.

There has never been any doubt in my mind of the board's jurisdiction, using that term as it has long been understood to mean—the power conferred by law upon a tribunal to enter upon the inquiry — the subject matter — here the counting of ballots. That power includes the power to make, in the course of the inquiry, erroneous rulings. It has also long been settled that such erroneous rulings are final unless they are reversed at the instance of the person against whom they are made, who has preserved his right

to have them reversed by taking the proper steps at the proper time in accordance with the rules governing the inquiry, *e. g.,* the rules of the *Brereton* case.

Said section 7 conferred jurisdiction upon the board to count all the ballots not just those validly cast. The board of canvassers of Warwick had a like jurisdiction. The counting of each ballot is not a separate case. A tribunal that has jurisdiction to take an account, *e. g.,* that of an executor, administrator or a trustee, has jurisdiction to allow items that should not be allowed. That is mere error in the exercise of jurisdiction, just as here it was mere error for the board to count, as it came to them, ballots cast before election day—error to be preserved for review as provided in the *Brereton* case.

The majority says that we are not concerned with certain ballots not properly marked in accordance with law. This was the situation in the *Brereton* case. That case did not involve a question of jurisdiction. I am unable to see, at least for jurisdictional purposes, any substantial difference between ballots invalid because they bear distinguishing marks and ballots invalid because their envelopes lack notarial seals or ballots invalid because they were cast before election day. In each case the ballots are invalid and no more or less so than in the other two cases.

I have examined the cases cited by the majority and they are in point on the question of the right of an appellate court to raise the lack of jurisdiction of the lower court over the subject matter without being asked so to do, but I find nothing in them that shows that in this case we have a lack of jurisdiction in the board.

*State Loan Co.* v. *Barry,* 71 R. I. 188, cited by the majority, was an action at law commenced by a writ wherein the ad damnum was fixed at $1,000 returnable to the superior court. This court referred to the statute which provided that the superior court shall have exclusive original jurisdiction only when the damages laid in the writ shall *exceed*

$1,000 and that the statute also provides that the district court shall have exclusive original jurisdiction of all civil actions wherein the damages laid in the writ *do not exceed* $1,000. Here we have a perfect illustration of lack of jurisdiction over the subject matter but it has no application to the facts of this case.

Jurisdiction must be conferred by the constitution or by statute and what better illustration of this rule can be found than in the very opinion of the majority. The intervenor moved to dismiss this case because he claimed that the petition showed on its face that this court *lacked jurisdiction* to hear it because the constitution makes each house of the general assembly the sole judge of the election and qualification of its members. I agreed with the majority that the reasoning of Mr. Justice Douglas in *State* v. *Town Council,* 18 R. I. 258, is more convincing than that of the dissenter Mr. Justice Stiness who, unlike his associates, did not abandon the first opinion in that case. That does not mean, however, as might be inferred from the statement of the majority at the end of its consideration of that motion that I agreed that we should proceed to hear the so-called merits of this case. I did not so agree because as I have stated in my dissent filed on January 1, 1957, the petitioner had failed to preserve "the right to question here the constitutionality of the absentee and shut-in ballots."

Since my dissent was grounded *solely* upon the failure of the petitioner to properly preserve his right to be heard at all on the substance of his petition, had I received any support from my brethren the petitioner would have been stopped right at the threshold of the court. Such being my position I have confined this opinion strictly to the reasons that led to my position and to the reasons why I could not agree with the majority that we were dealing with lack of jurisdiction. Consistently with that position I have not discussed here anything concerning the court's decision of January 1, 1957 on the merits, except to emphasize the

words of my dissent thereto, namely: "If this question is properly before us."

If it be said that my dissent is based on a procedural point, my answer is that it was upon this procedural point that this court refused to hear the merits of the *Brereton* case.

For the foregoing reasons it is my judgment that the instant decision should read: "The petition is denied and dismissed, the writ is quashed, the restraining order heretofore entered is dissolved, and the records certified to us are ordered returned to the board of elections with our decision endorsed thereon."

*John C. Burke, Daniel J. Murray,* for petitioner.

*Stephen F. Achille,* for respondent Board of Elections.

*Coleman B. Zimmerman, Alfred H. Joslin, Thomas H. Needham, Ray H. Durfee, Hinckley, Allen, Salisbury & Parsons, Tillinghast, Collins & Tanner, Albert A. Nutini, Harold H. Winsten,* for intervenors.