375 A.2d 203.

WILLIAM H. BAILEY *et al. vs.* ROBERT F. BURNS,
*Secretary of State.*

JUNE 21, 1977.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. This petition for a writ of mandamus seeks to compel the respondent, in his capacity as Secretary of of State, to forthwith give the oath of office to the petitioner William H. Bailey as representative of the 19th Representative District. The respondent filed an answer and memorandum of law in opposition to the petition. We

assigned the matter for oral argument on February 11, 1977. See *Bailey* v. *Burns*, 117 R.I. 979-80, 368 A.2d 583 (1977). After that hearing we entered an order granting the petition, directing the alternative writ to issue forthwith, and assigning the case for oral argument on the merits on March 11, 1977. See *Bailey* v. *Burns*, 117 R.I. 985, 370 A.2d 247 (1977). The alternative writ ordered the respondent to administer the oath of office to the petitioner Bailey, as prayed for or, in the alternative, to show cause why he should deny the petitioner the oath of office. *McCoy* v. *Nolan ex rel. Providence Journal Co.*, 74 R.I. 464, 62 A.2d 330 (1948); *Nolan* v. *McCoy*, 77 R.I. 96, 73 A.2d 693 (1950).

The petitioner Bailey's version of the facts, as set forth in his petition for mandamus, is in substance as follows. In June 1976, pursuant to state law[1] and the rules and regulations of the Providence Board of Canvassers, Mr. Bailey filed nomination papers for the office of state representative for the 19th district. No objection to those papers were filed under the applicable statute,[2] nor did Mr. Bailey file to withdraw his nomination. Following the September primary, a certificate of nomination as the Democratic candidate was issued to him by the Board of Canvassers. On November 2, 1976, Mr. Bailey received a plurality of the votes cast for 19th district representative.

Mr. Bailey's name appeared throughout this time on the voting lists as a qualified elector in his district; no formal objection to his qualifications was made to the Board of Canvassers, Board of Elections or House of Representatives by any qualified elector of the 19th Rep-

---

[1] General Laws 1956 (1969 Reenactment) §17-14-12, as amended by P.L. 1974, ch. 36, §4.

[2] General Laws 1956 (1969 Reenactment) §17-14-13.

resentative District. However, allegations concerning Mr. Bailey's qualifications were contained in a letter to the Board of Elections from Colonel Walter E. Stone of the State Police, and the board held a hearing on these allegations. The board unanimously decided it had no jurisdiction to question his qualifications as an elector and subsequently certified Mr. Bailey's name as a duly elected representative from the 19th district to the Secretary of State.

On January 2, 1977, a special informal meeting was held by prospective members of the House. At this meeting, Mr. Bailey and the other members-elect were informed that an objection might be made to his qualifications by prospective house members on the ground that he might possibly be in violation of art. XXXVIII of amendments to the Constitution of this state "in that an act he allegedly committed in 1962 was or might be in violation of this 1973 Amendment." On the following day, two prospective members filed such objections.

Mr. Bailey further alleges that on January 4, 1977, the Secretary of State refused to perform his ministerial duty under art. IX, §5[3] of the state Constitution by refusing to administer the oath of office to Mr. Bailey.

In his answer and memorandum, respondent admits that by letter dated December 20, 1976, he was informed by the State Board of Elections that, based upon its count and tabulation of the vote cast, one William H. Bailey had been elected to the office of representative in the 19th Representative District in the general election on No-

---

[3]R.I. Const. art. IX, §5 reads as follows:

"Administration of oaths. — The oath of affirmation shall be administered to the governor, lieutenant governor, senators, and representatives by the secretary of state, or, in his absence, by the attorney-general. The secretary of state, attorney-general, and general treasurer shall be engaged by the governor, or by a justice of the supreme court."

vember 2, 1976. The respondent also admits that on January 4, 1977, he certified to the House of Representatives the information he had received from the Board of Elections pursuant to the requirements of §§22-3-1 and 22-3-13. However, respondent states that, contrary to petitioners' allegations, the information received from the Board of Elections did not refer to Mr. Bailey as a "duly elected" representative, nor did the Attorney General or any of his assistants ever recommend to said board that Mr. Bailey be certified as a "duly elected State Representative."

The respondent's answer also contains the following statements. On January 4, 1977, the members present of the House of Representatives took their engagements of office before respondent pursuant to the provisions of art. IX, §5 of the Rhode Island Constitution and §22-3-17.[4] The petitioner Bailey did not take an engagement of office nor make any oath or affirmation although he was present in the House chamber at the time. Contrary to Mr. Bailey's allegations, respondent did not refuse to administer any oath of office to Mr. Bailey. The respondent was informed and believes that Mr. Bailey himself voluntarily refrained from taking the engagement of office. Mr. Bailey remained seated at the time that the oath of office was administered to the entire House by respondent.[5]

---

[4]General Laws 1956 (1968 Reenactment) §22-3-17 reads as follows:

"Taking of engagement of office by members. — On the first Tuesday in January in each odd-numbered year, at 12 o'clock noon, the persons whose names are borne on the respective lists aforesaid shall be admitted to take seats as members of the senate and house of representatives, respectively, and such persons shall assemble at said time in their respective chambers at Providence and take their engagement of office before the secretary of state, attorney-general, or some person authorized by law to administer oaths."

[5]An affidavit by respondent dated January 14, 1977 is attached to his answer and memo and is reproduced as Appendix A to this opinion.

The respondent further asserts that on January 4, 1977, the House of Representatives voted to refer the question of whether to seat Mr. Bailey to a select committee of the House to make factual findings and recommendations. The Select House Committee on Credentials held open hearings on several days commencing January 5, 1977, on the question of Mr. Bailey's qualifications after which it prepared and submitted a final report to the House of Representatives.

In its decision, dated January 17, 1977, the select committee decided that certain "crimes committed by Mr. Bailey in 1961, 1962 and 1963 were infamous as described in Article 24"[6] of our state Constitution and that "Article 24 applied to the crimes committed in" those years. After finding that the crimes committed by Mr. Bailey constituted a "prohibition under Article 24," the select committee recommended "to the House of Representatives that he not be seated."

Additionally, the committee suggested the following alternative:

"1. The full House can accept the recommendations of the Select Committee and vote not to seat William H. Bailey.

"2. The full House can reject the recommendations of the Select Committee and vote to seat William H. Bailey.

---

[6] R.I. Const. amend. XXIV, §4, adopted November 7, 1950, provides, in part, as follows:

"[N]o pauper, lunatic, person non compos mentis, or person under guardianship shall be permitted to be registered or to vote. Nor shall any person convicted of bribery, or of any crime deemed infamous at common law, be permitted to exercise that privilege, until he be expressly restored thereto by act of the general assembly."

"3. The full House can vote to request an advisory opinion from the State Supreme Court. Without attempting to usurp the jurisdiction of the House, the following form or forms are suggested.

"I. Is Article 38 of the State Constitution to be interpreted retrospectively or prospectively.'
OR

"II. What Constitutional standard of the State Constitution shall govern the disenfranchisement of a person convicted of a felony in a sister state in 1961 and 1963."

On January 27, 1977, the House of Representatives passed a resolution stating that:

"William H. Bailey is under a constitutional disqualification and, therefore, is not qualified to hold office as a member of this House of Representatives."

The House based its action upon the report of the select committee and was acting under the provisions of art. IV, §6, which reads as follows:

---

'R.I. Const. amend. XXXVIII, §1, adopted November 6, 1973, reads as follows:

"Persons qualified to vote. — Every citizen of the United States of the age of eighteen (18) years or over who has had his residence and home in this state for thirty (30) days next preceding the time of voting, who has resided thirty (30) days in the town or city from which he desires to vote, and whose name shall be registered at least thirty (30) days next preceding the time of voting as provided by law, shall have the right to vote for all officers to be elected and on all questions submitted to the electors, except that no person who has been lawfully adjudicated to be non compos mentis shall be permitted to vote. Nor shall any person otherwise qualified to vote as provided in this article be permitted to vote while serving a prison sentence on final conviction of a felony nor subsequent to such imprisonment until the franchise shall have been restored by an act of the general assembly. The general assembly may provide by law for shorter state and local residence requirements to vote for electors for president and vice president of the United States."

"Organization and proceedings of houses. — Each house shall be the judge of the elections and qualifications of its members; and a majority shall constitute a quorum to do business; but a smaller number may adjourn from day to day, and may compel the attendance of absent members in such manner, and under such penalties, as may be prescribed by such house or by law. The organization of the two houses may be regulated by law, subject to the limitations contained in this Constitution."

It was in the context of the foregoing factual background that the instant petition was filed. The narrow issue presented for our determination is whether Mr. Bailey was deprived of his right to have the oath of office administered to him on January 4, 1977, under the provisions of art. IX, §5, as implemented by the provisions of G.L. 1956 (1968 Reenactment) ch. 3 of title 22.

Mr. Bailey argues that he was deprived of his right to be administered the oath of office to which he was entitled by virtue of the certificate transmitted by the State Board of Elections to the Secretary of State on December 20, 1976, declaring that he had been elected to the office of representative in the 19th Representative District. In response to the alternative writ directing him to show cause why he should not administer the oath of office to Mr. Bailey, respondent has advanced certain arguments to which we address ourselves at this time.

I

We consider initially respondent's contention that this court is without subject matter jurisdiction over the issues raised in this petition. He argues that jurisdiction over this matter rests with the House of Representatives exclusively. The respondent relies on that portion of art. IV, §6 which provides that "[e]ach house shall be the judge of the elections and qualifications of its members * * *." In support of his argument that art. IV, §6 grants to each

house full jurisdiction over the elections and qualifications of its members, respondent cites *Corbett* v. *Naylor*, 25 R.I. 520, 57 A. 303 (1904), *McGann* v. *Board of Elections*, 85 R.I. 223, 129 A.2d 341 (1957), and *State* v. *Town Council*, 18 R.I. 258, 27 A. 599 (1893). We have no quarrel with the holdings in those cases, but they are of no help to respondent in the case at bar. The basic issue in the instant case concerns the question of whether Mr. Bailey should be sworn in by the Secretary of State and not the question of whether he should be seated as a member of the House of Representatives.

The question of whether the oath of office should be administered to Mr. Bailey presents a justiciable question of constitutional dimensions, namely, whether the language of art. IX, §5 is mandatory or merely directory. As this court said in *McGann* v. *Board of Elections*, *supra* at 230, 129 A.2d at 345:

> "Since 1893 the law has been well settled that jurisdiction of this court to pass upon questions of law in cases brought before it involving elections for senators and representatives in the general assembly is not affected by the constitutional provision that each house of the general assembly 'shall be the judge of the elections and qualifications of its members * * *.'"

In *McGann*, *supra*, we denied the motion of the intervenor to dismiss the petition for lack of jurisdiction. In the case at bar we hold that this court has jurisdiction of the subject matter involved in this proceeding and therefore has jurisdiction to pass upon the question of whether the writ of mandamus should issue directing respondent Secretary of State to administer the oath of office to petitioner Bailey.

## II

We address ourselves next to the merits of Mr. Bailey's request for a writ of mandamus to compel respondent-Secretary of State to forthwith administer the oath of office to Mr. Bailey as representative of the 19th Representative District.

In response to the alternative writ respondent argues that mandamus may not properly issue against him in this case. He contends that under the constitution and laws of this state, he has no plain unequivocal legal duty to perform the requested act, *Berk* v. *LaFrance,* 98 R.I. 402, 404, 203 A.2d 760, 761 (1964); that petitioner Bailey's certificate of election does not establish a legal right to have the requested act done; and that mandamus is not a proper remedy under the facts and law involved in this proceeding. For the reasons that follow we agree with respondent that mandamus should not issue in this proceeding and therefore conclude that he has shown cause why, in the circumstances of this case, this court cannot order him to administer the oath of office to Mr. Bailey.

The provisions of art. IX, §5, stating that "[t]he oath or affirmation shall be administered to the * * * representatives by the secretary of state," whether mandatory or merely directory, cannot be read in a vacuum. That section must be read in the context of, and together with, other related sections of our state constitution, such as the provision in amend. XXXIX, §1, that "[n]o person shall hold any civil office unless he be a qualified elector for such office" and the provision in art. IV, §6 that "[e]ach house shall be the judge of the elections and qualifications of its members * * *."

When so read, art. IX, §5 means that the oath or affirmation shall be administered to persons constitutionally qualified to hold civil office by virtue of being qualified electors for such office as set forth in amend. XXXIX,

§1. The people, in adopting art. IX, §5, contemplated the administration of an oath or affirmation to persons who are constitutionally qualified to hold the office of representative.

The record in this case shows that the House of Representatives, by resolution adopted on January 27, 1977, found that Mr. Bailey was under a constitutional disqualification to hold office as a member of the House of Representatives. The record also shows that the House based this resolution on the findings of the select House committee on credentials that certain crimes committed by Mr. Bailey were infamous under amend. XXIV and that his conviction for those offenses deprived him of the right to vote. In summary, the House decided that Mr. Bailey was not a qualified elector and that therefore he was not constitutionally qualified to hold civil office. Notwithstanding that decision, nothing we say in this case is intended to preclude Mr. Bailey from challenging the basis on which the House grounded its decision.

It is clear that in so voting the House was acting pursuant to the power granted to it in art. IV, §6 providing that "[e]ach house shall be the judge of the elections and qualifications of its members * * *." There is no merit to petitioner's argument that art. IV, §6 applies only to members and not to members-elect. In our judgment art. IV, §6 applies to both; it grants to each house full jurisdiction over the elections and qualifications of members-elect as well as members. *See Corbett* v. *Naylor,* and *McGann* v. *Board of Elections,* both *supra.*

As the court said in *State* v. *Town Council, supra*:
> "* * * the senate may seat a senator and the house of representatives may refuse to seat a member-elect to that house * * *. Under the Constitution the action of each house with respect to the person claiming to be elected, is valid and final * * *."

Article I, §5 of the Constitution of the United States grants the same power to the United States House of Representatives. When confronted with an argument that art. I, §5 did not confer upon the houses of Congress jurisdiction over the elections and qualifications of members-elect, the Supreme Court of the United States, in rejecting that argument, spoke as follows:

> "To hold otherwise would be to interpret the word 'member' with a strictness in no way required by the obvious purpose of the constitutional provision, or necessary to its effective enforcement in accordance with such purpose * * *." *Barry* v. *United States ex rel. Cunningham*, 279 U.S. 597, 615, 49 S.Ct. 452, 455, 73 L.Ed. 867, 872 (1929).

*Powell* v. *McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), cited by petitioner Bailey in his brief, is of no help to him. In *Powell*, the petitioner had been excluded from his seat in the United States House of Representatives for reasons other than a failure to meet the constitutional qualifications for such office. In declaring Powell's exclusion illegal, the court said that "the House is without power to exclude any member-elect who meets the Constitution's requirements for membership." *Id.* at 547, 89 S.Ct. at 1977, 23 L.Ed.2d at 531. The court recognized in *Powell* the power of a house of Congress to exclude a member-elect for failure to qualify for membership, but limited the exercise of that power to situations where a member-elect failed to meet the qualifications for office set forth in the Constitution.

Thus, in view of the decision of the House of Representatives that Mr. Bailey was not a qualified elector and therefore disqualified from holding civil office, he was not within the contemplation of the provisions of art. IX, §5 with respect to the duty of the respondent-Secretary of State to administer the oath or affirmation. Consequently, we conclude that the respondent has shown cause why he

should not administer the oath of office to the petitioner Bailey.

The relief prayed for in the petition is denied and dismissed.

Mr. Chief Justice Bevilacqua did not participate.

Appendix A

*A F F I D A V I T*

I, Robert F. Burns, being duly sworn, make Affidavit and say:

1. I am the Secretary of State of Rhode Island, duly elected on November 2, 1976.

2. Pursuant to Article 9 of the Constitution of Rhode Island, I appeared in the chamber of the House of Representatives on January 4, 1977, to swear in members of the House elected on November 2, 1976.

3. That upon arrival on the rostrum, the presiding officer, the senior member from the City of Newport, who was presiding pursuant to Article V, Section 2 of the Rhode Island Constitution, asked me to announce that all members-elect except Mr. Bailey, stand to take the oath of office. I made an announcement to that effect and then administered the oath of office to those members present and standing.

4. I have never met William Bailey; I have never been asked by him either directly or indirectly to administer to him the oath of office.

5. In light of the above, I have never refused to administer the oath of office to Mr. Bailey.

(signed)   Robert F. Burns

Subscribed and sworn to before me this 14th day of January, 1977.

(signed)   Leonard F. Clingham, Jr.

Notary Public

*John A. O'Neill, Jr., Louis A. Mascia, William M. Kunstler,* for petitioner.

*Julius C. Michaelson,* Attorney General, *William Granfield Brody,* Special Asst. Attorney General, for respondent.